# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 22-5377

JAMES W. RORIE, SR., APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued June 13, 2024                                    Decided August 16, 2024)

*Tracy K. Alsup,* of Beaverton, Oregon, for the appellant.

*James R. Drysdale*, with whom *Richard J. Hipolit*, Deputy General Counsel for Veterans Programs; *Mary Ann Flynn*, Chief Counsel; *Christopher W. Wallace*, Deputy Chief Counsel; and *Anna M Castillo*, Appellate Attorney, all of Washington, D.C., were on the brief for the appellee.

Before ALLEN, TOTH, and FALVEY, *Judges*.

ALLEN, *Judge*, filed the opinion of the Court. TOTH, *Judge*, filed a concurring opinion.

ALLEN, *Judge*: This appeal calls on us to explore the evolving area of judicial deference to the positions of administrative agencies. And if that is not enough alone to entice one to read on, we will also consider how recent changes in the administrative law landscape affect principles of horizontal statutory stare decisis. But we're getting ahead of ourselves.

Appellant James W. Rorie, Sr., served the Nation honorably in the U.S. Marine Corps from August 1967 to May 1970, including service in Vietnam.[1] In this appeal, which is timely and over which the Court has jurisdiction,[2] appellant contests an August 19, 2022, Board of Veterans' Appeals decision that denied entitlement to an effective date before November 18, 1988, for service-connected tinea pedis. Our decision today revolves around appellant's challenge to the Board's effective-date determination. Specifically, appellant advances two arguments for an effective date before November 18, 1988. His primary argument would lead to an effective date

---

[1] Record (R.) at 20,548.

[2] *See* 38 U.S.C. §§ 7252(a), 7266(a).

of August 5, 1985. The second argument would afford appellant an effective date of November 6, 1987.

We first preview appellant's claim that he is entitled to an effective date in 1985 for service connection for tinea pedis. In this regard, before March 2015, VA accepted informal claims and, as particularly relevant here, allowed a report of an examination by a VA medical professional to serve as an informal claim if certain criteria set forth in 38 C.F.R. § 3.157(b) were met.[3] In *Pacheco v. Gibson*,[4] the en banc Court interpreted § 3.157(b), and held, in pertinent part, that the regulation applied only in situations in which a claim was previously "disallowed for the reason that the disability was not compensable in degree."[5]

We will return to § 3.157(b) and *Pacheco* below. For now, the key point is that appellant maintains that he is entitled to an effective date of August 5, 1985, the date of a VA examination report that VA should have construed as an informal claim to reopen his previously denied tinea pedis claim under § 3.157(b) (1985). But appellant recognizes that he faces a major problem with this argument. Namely, *Pacheco* forecloses his argument. And this is where we make our entry into administrative law. Appellant contends that the Court is no longer bound by *Pacheco* in light of the U.S. Supreme Court's decision in *Kisor v. Wilkie*.[6] In *Kisor*, the Supreme Court revisited the circumstances under which Federal courts were to defer to the views of administrative agencies when dealing with ambiguous regulations under the Supreme Court's precedent in *Auer v. Robbins*.[7] In other words, appellant asserts that because the Court in *Pacheco* employed a pre-*Kisor* deference analysis under *Auer* to interpret § 3.157(b), we must reevaluate our interpretation of § 3.157(b) using a *Kisor*-compliant deference analysis. And he continues by insisting that he would be able to succeed on the merits if the Court were not bound by *Pacheco* and its purportedly overly deferential assessment of § 3.157(b).

This matter was referred to a panel of the Court to address appellant's primary argument under § 3.157(b) and to decide, given *Kisor*, whether the Court's interpretation of § 3.157(b) in *Pacheco* remains binding precedent. As we explain in detail below, we hold that *Kisor* does not

---

[3] 38 C.F.R. § 3.157(b) (2012) (repealed by 79 Fed. Reg. 57,659, 57,696 (Sept. 25, 2014), effective Mar. 24, 2015).

[4] 27 Vet.App. 21 (2014) (en banc).

[5] *Id.* at 20.

[6] Appellant's Brief (Br.) at 7-8 (citing *Kisor v. Wilkie*, 588 U.S. 558 (2019)).

[7] 519 U.S. 452 (1997); *see Kisor*, 588 U.S. at 563; *see also LaBruzza v. McDonough*, 37 Vet.App. 111, 118 (2024).

2

require that we revisit *Pacheco.* Shortly after we held argument in this appeal,[8] the Supreme Court overruled the *Chevron* doctrine that had outlined a framework for judicial deference to administrative agency's views of ambiguous statutes.[9] Significantly, the Supreme Court made clear that its decision did not upset earlier decisions that had relied on the *Chevron* doctrine.[10] In other words, principles of stare decisis generally required courts to adhere to such earlier decisions that had been rendered under the then-required *Chevron* framework.[11] We see no principled reason that the same rule of stare decisis does not hold sway in the context of the Supreme Court's change from *Auer* to *Kisor* deference in terms of ambiguous regulations. And, as we will explain in detail, to the extent this Court's recent decision in *LaBruzza v. McDonough* proceeded along a different path, we conclude that it is irreconcilable with the logic of *Loper Bright Enterprises v. Raimondo*. So, we conclude that we remain bound by *Pacheco*. And because appellant agrees he can't prevail under that precedent, we will affirm the Board's denial of an effective date of August 5, 1985, for service-connected tinea pedis.

This leaves appellant's alternate argument that he is entitled to an effective date of November 6, 1987, based on a statement he submitted that he maintains should have been deemed an informal claim for tinea pedis under the law. This argument would not have required a panel because it is governed by existing law. As we explain, the Board applied the correct legal principles and its conclusion that the November 6, 1987, statement is not an informal claim for tinea pedis is not clearly erroneous. Accordingly, we will affirm the Board's August 2022 decision in full.

## I. BACKGROUND

In June 1970, appellant filed a claim seeking entitlement to service connection for "flat feet."[12] In October 1970, VA granted appellant service connection for bilateral pes planus and assigned a noncompensable disability rating.[13] In March 1974, VA awarded appellant a 10% disability rating for service-connected bilateral pes planus, effective May 29, 1970, the day after

---

[8] Oral Argument (OA), *Rorie v. McDonough*, U.S. Vet. App. No. 22-5377 (oral argument held June 13, 2024), https://www.youtube.com/watch?v=cfs_44-TPYQ&t=549s.

[9] *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 603 U.S. __ (2024).

[10] *Loper Bright*, 144 S. Ct. at 2273, 603 U.S. at __.

[11] *Loper Bright*, 144 S. Ct. at 2270-74, 603 U.S. at __.

[12] R. at 20,551.

[13] R. at 20,536-37.

3

appellant separated from service.[14] Roughly 10 years later, in August 1980, appellant underwent a VA medical examination and was diagnosed with tinea pedis.[15]

In April 1983, appellant sought "re-evaluation" of his foot condition because of "increased pain/discomfort and a worsening skin irritation on [his] feet."[16] VA characterized appellant's request as one for an increased rating for service-connected bilateral pes planus as well as a new claim for service connection for tinea pedis. In July 1983, VA denied both claims.[17] In December 1983, appellant appealed to the Board and it denied service connection for tinea pedis in a March 1985 decision.[18]

In August 1985, appellant was treated for a fungal infection of both feet.[19] In September 1986, appellant was treated for "tinea infection."[20] On November 6, 1987, VA received correspondence from appellant that stated:

> I am requesting a re-examination of my service-connected disabilities for the purpose of obtaining an increased rating. The basis of this request for a higher . . . service[-]connected disability rating is due to a continual worsening of compensa[]ble related conditions previously identified. Past visits and treatments at [VA] medical facilities have been largely unsuccessful in curbing the pain and increased debilitati[on] [from] my service-connected disabilities which have been further exacerbated by growing older.[21]

Roughly a year later, on November 14, 1988, appellant sent a letter to VA concerning his tinea pedis claim.[22] Specifically, appellant inquired whether his tinea pedis claim could be "processed

---

[14] R. at 20,404 (Mar. 1974 rating decision), 20,367 (Nov. 1974 Board decision). Judicial review was not available to veterans, and other claimants, who were denied benefits at the agency level until Congress passed the Veterans' Judicial Review Act (VJRA) in 1988. *See* Pub. L. No. 100-687, § 402, 102 Stat. 4105, 4122 (1988).

[15] R. at 20,088 (Mar. 1985 Board decision). A copy of the August 1980 VA medical examination report is not in the record but is referenced in the March 1985 Board decision. Neither party argues that the omission of this record is material and we don't see that it is.

[16] R. at 20,179. There is nothing in the record to indicate that any development occurred between November 1974 and April 1983 with respect to appellant's bilateral foot condition.

[17] R. at 20,162.

[18] R. at 20,128 (Dec. 1983 Board Appeal), 20,087-92 (Mar. 1985 Board decision). Judicial review was still not yet available. *See supra* note 15.

[19] R. at 20,058.

[20] *Id.*

[21] R. at 20,075.

[22] R. at 19,966.

4

simultaneously" along with a claim for service connection for hearing loss.[23] VA characterized the November 1988 letter as a request to reopen his claim for service connection for tinea pedis.

In January 2010, the RO granted service connection for tinea pedis, effective March 1, 2007, based on VA medical examination findings.[24] Appellant contested the assigned effective date, and after three Board appeals and two joint motions for partial remand (JMPRs) at the Court, the Board issued a decision in May 2020.[25] The Board found that an effective date before November 18, 1988, was not warranted because "the earliest date after the March 1985 Board decision that the [v]eteran expressed an intent to reopen his claim for service connection for tinea pedis is November 18, 1988."[26] The Board also concluded that "there is no record of any evidence, to include any medical records or statements from the Veteran or his representative, being received by VA between the Board's [March 1985] decision . . . and prior to November 6, 1987."[27] Appellant appealed that decision to the Court.

In December 2021, we set aside the Board's May 2020 decision and remanded the matter because the Board failed to consider relevant evidence, specifically the November 6, 1987, statement, when determining the effective date for appellant's tinea pedis claim.[28] We also declined to address appellant's argument about the application of § 3.157(b) because the argument was too underdeveloped.[29] The matter was returned to the Board.

In August 2022, the Board issued the decision on appeal, explaining that the question before it was "whether a formal or informal claim is of record at any time between March 14, 1985[,] and November 18, 1988."[30] The Board declined to apply § 3.157(b) and largely focused on addressing the November 1987 statement.[31] The Board concluded that "[t]he most reasonable

---

[23] *Id.*

[24] R. at 16,869-71. Neither party explains the 22-year gap in the procedural history.

[25] R. at 13,986-14,035 (Jan. 2015 Board decision), 12,845-52 (May 2016 JMPR), 12,551-77 (Nov. 2016 Board decision), 10,278-83 (Oct. 2018 JMPR), 7982-87 (Apr. 2019 Board decision), 3122-28 (May 2020 Board decision).

[26] R. at 3128.

[27] R. at 3126.

[28] R. at 696-99.

[29] *Id.*

[30] R. at 8.

[31] The Board also stated that in May 2022, Mr. Rorie filed a motion to revise a previous decision based on clear and unmistakable error (CUE), and one of his CUE arguments was that § 3.157(b) is applicable to his tinea pedis claim

interpretation is that the November 1987 letter does not express an intent to claim service connection for a new disability or reopen a previously denied service connection claim, but instead to claim an increased rating for his service-connected bilateral pes planus disability."[32] The Board also stated that it was not clear whether appellant's mention of "compensable related conditions" in his 1987 statement included a reference to tinea pedis.[33] The Board also discussed whether medical records dated between 1985 and 1987 satisfied the requirements of an informal claim for service connection for tinea pedis. The Board concluded that the mere mention of a diagnosis in a VA medical report does not establish the requisite intent to file a claim for service connection for that condition.[34] This appeal followed.

## II. ANALYSIS

Our analysis tracks appellant's arguments. We will first discuss appellant's principal argument that he is entitled to an effective date of August 5, 1985, relying on §3.157(b) (1985).[35] This argument requires us to evaluate a complex threshold issue, namely whether the Supreme

---

based on 1985 and 1986 VA treatment records. R. at 7. The Board concluded that it would not address the veteran's CUE contentions because it lacked jurisdiction over the merits of the matter. *Id*. Appellant does not challenge this finding. So, we deem any appeal as to it abandoned. *See Pederson v. McDonald*, 27 Vet.App. 276, 281-86 (2015) (en banc).

[32] R. at 10.

[33] *Id*.

[34] R. at 11 (citing *Brannon v. West*, 12 Vet.App. 32, 35 (1998)).

[35] To the extent that the Board's earlier CUE finding, *see supra* note 30, could raise a question about the Court's jurisdiction over the § 3.157(b) matter, we conclude that the Court has jurisdiction to consider the matter. *See Kernz v. McDonough*, 36 Vet.App. 372, 379-80 (2023) (en banc) (discussing that federal courts have an obligation to ensure they have jurisdiction to act). Although Mr. Rorie's May 2022 correspondence was unclear, his argument concerning § 3.157(b) does not appear to be included in the portion where he alleged CUE. *Compare* R. at 86-87 (stating that before the Court, he had asserted that because of 1985 and 1986 VA treatment records, 1985 or 1986 could be the appropriate effective date based on § 3.157(b)), *with* R. at 88 (later alleging that because of CUE, the veteran was not given (1) appropriate consideration for service connection for skin disabilities he claimed in 1973 and 1983; (2) the correct effective date for skin disabilities based on "the date his informal and/or formal claim was filed or for which he was eligible under VA rules as shown in the existing VA record at the time"; or (3) proper consideration under 38 C.F.R. § 4.118 (schedule of ratings for the skin)).

It is true that in this correspondence to the Board, Mr. Rorie did not elaborate on his § 3.157(b) argument as the Court had directed, *see Rorie v. McDonough*, No. 20-6533, 2021 WL 6061896, at *2 (Vet. App. Dec. 22, 2021) (mem. dec.), nor did he identify which decision(s) he was requesting that VA revise. Still, Mr. Rorie's § 3.157(b) argument seems to be separate from his CUE allegations. And so, the Board appears to have mischaracterized that argument as being part of his CUE motion. And this is particularly true because Mr. Rorie had already raised this (albeit underdeveloped) argument to the Court, *see Rorie*, 2021 WL 6061896, at *2, and then reiterated it (although still underdeveloped) to the Board, *see* R. at 86-87. The bottom line is that we have assured ourselves that we have jurisdiction here.

Court's decision in *Kisor*[36] requires us to revisit our en banc decision in *Pacheco*[37] concerning § 3.157(b). We conclude that *Pacheco* remains binding and, therefore, we will reject appellant's first argument. We will then turn to appellant's alternative argument that he is entitled to an effective date of November 6, 1987. Here, appellant relies on *Shea v. Wilkie* to assert that his November 1987 submission was an informal claim for tinea pedis.[38] We can't say that the Board erred when it determined that the November 1987 submission was not an informal claim for tinea pedis. So, we will reject this second argument and, accordingly, affirm the Board's decision.

## A. Earlier Effective Date—August 1985

### 1. Parties' Arguments

Appellant presents two theories under which he believes that he is entitled to an earlier effective date of August 5, 1985, under §3.157(b). First, in his opening brief, appellant argues that he is entitled to an August 5, 1985, effective date because VA should have recognized that the August 1985 VA examination report was an informal claim to reopen his previously "disallowed or denied" tinea pedis claim.[39] Appellant continued to assert this theory in his reply brief.[40] Moreover, appellant asserts that the Court is not bound by our en banc decision in *Pacheco* that would foreclose his theory for an August 1985 effective date.[41] He maintains that *Pacheco* was based on a theory of judicial deference to an administrative agency's position that has been undermined by the Supreme Court in *Kisor*.[42] He argues that the Court should interpret § 3.157(b) anew and, when it does so, he could prevail.[43]

Appellant's second theory did not emerge until he filed his supplemental brief. There, appellant argued for the first time that he is entitled to an August 5, 1985, effective date for service-connected tinea pedis because VA should have recognized that the August 1985 VA examination report was an informal claim for increase for his already "allowed" bilateral foot claim that he

---

[36] 588 U.S. at 558.

[37] 27 Vet.App. at 20.

[38] 926 F.3d 1361 (Fed. Cir. 2019).

[39] Appellant's Br. at 6.

[40] Reply Br. at 5.

[41] Appellant's Br. at 7-8; Reply Br. at 5.

[42] Appellant's Br. at 8.

[43] *Id.* at 10.

maintains encompassed his tinea pedis condition.[44] Appellant asserts that VA erroneously bifurcated his initial bilateral foot claim into two separate claims: one for bilateral pes planus and one for tinea pedis.[45] Appellant purports that he has always pursued his bilateral foot claim as encompassing both foot disabilities and he has "never brought a separate claim for tinea pedis."[46]

During oral argument, appellant's counsel confirmed that appellant changed his position between the opening (and reply) brief and his supplemental brief.[47] Appellant's counsel also explained that appellant was raising the "disallowed" route only because of the way that VA had characterized his claims—i.e., purportedly erroneously bifurcating his foot claim into two claims.[48] Ultimately, however, appellant maintains that his claim for tinea pedis has always been "allowed" for purposes of § 3.157(b) because he submitted a single claim for a foot condition that VA bifurcated.

The Secretary defends the Board's decision in full and urges us to affirm the Board's rejection of an August 1985 effective date for service connection for tinea pedis. In particular, the Secretary relies on *Pacheco*, which he contends forecloses appellant's argument for a 1985 effective date under § 3.157(b). And he maintains that nothing in *Kisor* undermines *Pacheco*, meaning that this panel remains bound by the en banc Court's decision about the meaning of § 3.157(b).

There is one point about appellant's position that we need to address further before we proceed with our analysis. Specifically, we must first consider whether it is appropriate for us to entertain appellant's late-raised second theory about why he is entitled to an August 1985 effective date, a contention that he presented for the first time in his supplemental brief and then expanded on at oral argument.[49] We conclude that it is not.

During oral argument, appellant's counsel agreed that the second incarnation of appellant's argument was not fully developed in the opening brief.[50] We agree with appellant as far as he goes,

---

[44] Appellant's Supplemental (Supp.) Br. at 10.

[45] *Id.* at 14.

[46] *Id.* at 10, 24.

[47] OA at 8:32-9:16, 16:36-22:26.

[48] OA at 10:43-12:00.

[49] *Maggitt v. West*, 202 F.3d 1370, 1377-78 (Fed. Cir. 2000).

[50] OA at 10:30-12:00.

but we also think saying that the argument was not fully developed is an understatement. In his opening brief, it is true that appellant states that "VA itself, treated pes planus and tinea pedis as one claim," citing a September 1983 Statement of the Case (SOC).[51] However, this statement cannot be read to assert the argument appellant eventually advanced in his supplemental brief and during oral argument. First, the argument appellant raised in his supplemental brief and during oral argument was predicated on the tinea pedis claim as being "allowed" under § 3.157(b),[52] whereas the argument appellant raised in his opening and reply briefs was based on the tinea pedis claim as being "disallowed" under § 3.157(b).[53] Second, appellant's reference to his two disabilities being treated as one was only mentioned during his discussion of his argument seeking an effective date of *November 1987*—not during his primary argument about an earlier *August 1985* effective date. And if that is not enough, appellant fails to explain why he believes the SOC's description supports his view, when VA noted in the SOC that it was considering "[s]ervice connection for tinea pedis; increased evaluation for service-connected pes planus."[54] The semi-colon between the two claims suggests that the two conditions were treated as separate issues. What's more, VA appears to have properly characterized the conditions as two separate issues: service connection for a *skin* condition (tinea pedis) and an increased rating for an already service-connected *musculoskeletal* condition (pes planus). In sum, one simply can't say that the single reference in appellant's opening brief to the pes planus and tinea pedis claims as a single claim, would alert anyone that despite focusing on the "disallowed" language under § 3.157(b), he was really developing an argument about the "allowed" language under that regulation. Therefore, in simplest terms, appellant did not make the argument in his opening brief.

It is well established that arguments not raised in an opening brief are forfeited.[55] Although the Court sought supplemental briefing in this matter, it was for specific questions with the purpose of refining arguments that the parties had already made in their opening briefs. It was not an invitation for either party to raise new arguments or theories of entitlement. Moreover, by changing course so dramatically, appellant made it more difficult for the Secretary to respond. Appellant

---

[51] Appellant's Br. at 14.

[52] Appellant's Supp. Br. at 10-11; OA at 10:30-12:00.

[53] Appellant's Br. at 6, 10-14.

[54] R. at 20,149 (Sept. 2013 SOC).

[55] *Andrews v. McDonough,* 34 Vet.App. 151, 159 (2021).

essentially gave the Secretary a moving target at which to aim. And appellant left the Court trying to guess which theory he wanted us to consider when adjudicating his case—that is, should we consider his tinea pedis claim allowed or disallowed, where the claim could presumably be only one or the other, but not both. Therefore, exercising our discretion, we decline to address appellant's second, late-raised theory of entitlement to an earlier effective date under § 3.157(b), namely that we should address his claim as one that has been "allowed" under the terms of § 3.157(b). Accordingly, in the balance of this section, we will focus on appellant's original theory—that the August 1985 report of examination should have been construed as a claim to reopen his previously "disallowed" tinea pedis claim under § 3.157(b) (1985).

### 2. 38 C.F.R. § 3.157(b) (1985)

As we have explained, appellant asserts that he could be entitled to an August 1985 effective date under § 3.157(b). But that argument is a nonstarter under the en banc Court's analysis in *Pacheco*. So, the *first* step in terms of evaluating appellant's argument is to is to decide whether we remain bound by *Pacheco*. If we are, that's the end of the matter. Appellant says *Pacheco* no longer binds us because of the Supreme Court's decision in *Kisor*. We reject that position, although it will take some explanation about why we reach that conclusion.

While we ultimately will not need to independently explore the meaning of § 3.157(b), it will be helpful to set the stage by briefly discussing that regulation as well as the Court's decision in *Pacheco*. So that is where we will begin in this sub-section.

In 1985, § 3.157(b) provided that

> [o]nce a formal claim for pension or compensation had been allowed or a formal claim for compensation disallowed for the reason that the service-connected disability is not compensable in degree, receipt of [a report of examination or hospitalization by VA or uniformed services] will be accepted as an informal claim for increased benefits or an informal claim to reopen.[56]

In 1987, § 3.157(b) was amended to specify that the date of claim based on a report of examination or hospitalization by VA is the date of such examination or admission to a hospital "when such reports relate to examination or treatment of a disability for which service[ ]connection has previously been established or when a claim specifying the benefit sought is received within one year from the date of such examination, treatment or hospital admission."[57]

---

[56] 38 C.F.R. § 3.157(b) (1985).

[57] 38 C.F.R. § 3.157(b)(1) (1987).

10

In July 2014, the en banc Court addressed § 3.157(b) in *Pacheco*. The Court held that the use of a report of examination as an informal claim to reopen under § 3.157(b)—the mechanism appellant is attempting to use in the appeal before us today—is limited to situations in which a claim was previously "disallowed for the reason that the disability was not compensable in degree."[58] The Court concluded that § 3.157(b) was ambiguous.[59] Having done so, the Court proceeded to consider whether it should defer to the Secretary's interpretation of the regulation under the then-prevailing *Auer* doctrine.[60]

Under *Auer*, a Federal court will defer to an agency's reasonable interpretation of its ambiguous regulation. Employing *Auer* deference, the Court held that the Secretary's argument that the language regarding claims for increase in § 3.157(b) was paired with the language regarding claims that had been allowed, and the "language regarding claims to reopen is paired with the language regarding disability compensation claims that previously had been disallowed for service-connected disabilities being noncompensable in degree" was reasonable.[61] In a separate opinion, concurring in part and dissenting in part, Judge Davis agreed that § 3.157(b) was ambiguous but disagreed with the majority's opinion about the language pairings in § 3.157(b). Judge Davis too employed *Auer* deference principles. However, he explained that deferring to the Secretary's interpretation would render the 1987 amendment to § 3.157(b) superfluous. In short, Judge Davis concluded that the ambiguous language in § 3.157(b) should be interpreted in the veteran's favor.[62]

As we explained above, appellant recognizes that if the meaning of § 3.157(b) established in our en banc decision in *Pacheco* controls, he would not succeed.[63] Not surprisingly, the Secretary agrees.[64] This brings us to appellant's argument that we are not bound by *Pacheco*

---

[58] 27 Vet.App. at 30.

[59] *Id.* at 26.

[60] *Id.*

[61] *Id.* at 27.

[62] *Id.* at 36-42 (Davis. J., concurring in in part, dissenting in part). Appellant basically argues that he would prevail under a view of § 3.157(b), along the lines Judge Davis articulated in his separate opinion in *Pacheco*.

[63] *See generally* Appellant's Br. at 10.

[64] *See* Secretary's Br. at 7-10.

because that decision was premised on principles of *Auer* deference, principles that have been eroded by the Supreme Court in *Kisor*. [65]

Appellant's argument raises important questions about how changes in the law dealing with the circumstances under which Federal courts defer (or not) to administrative agencies' views about the law should be employed to undermine existing precedent. As we explain below, we reject appellant's argument that *Kisor* requires us to revisit *Pacheco* merely because the Court employed *Auer* deference.

3. *Kisor does not require us to revisit Pacheco.*

As we mentioned earlier, before *Kisor* the Supreme Court had directed Federal courts use the framework established in *Auer* to assess whether to defer to an agency's interpretation of its own ambiguous regulations. Under *Auer*, a Federal court must defer to the agency's interpretation of an ambiguous regulation so long as such an interpretation is reasonable, unless that interpretation is inconsistent with the language of the regulation, is otherwise plainly erroneous, or does not represent the agency's considered view on the matter.[66] Relevant to this appeal and as we explained earlier, in *Pacheco* the Court used the *Auer* deference doctrine to interpret § 3.157(b). The *Pacheco* Court first explained why it concluded that § 3.157(b) was ambiguous, and then it considered whether the Secretary's interpretation should be afforded deference because it was a reasonable interpretation of the ambiguous regulation. The majority of the en banc Court concluded that deference to the Secretary's interpretation of § 3.157(b) under *Auer* was warranted.[67]

The *Pacheco* majority's reliance on *Auer* is the hook appellant uses to try to avoid the fatal implication of *Pacheco* for his argument. Specifically, he argues that the Supreme Court's June 2019 decision in *Kisor* requires that we revisit *Pacheco*. In *Kisor*, the Supreme Court revisited *Auer*. While the Supreme Court did not overrule *Auer*, it significantly reshaped the law concerning how Federal courts determine whether they should defer to an agency's view of an ambiguous regulation.[68] It may seem counterintuitive, but the details of the Supreme Court's changes to the

---

[65] Appellant's Br. at 9-10.

[66]  519 U.S. at 461-62.

[67] 27 Vet.App. at 26-27.

[68] *Kisor*, 588 U.S. at 574-575. The Court has previously described how *Kisor* clarified the *Auer* framework. *See LaBruzza*, 37 Vet.App. at 117.

12

*Auer* doctrine in *Kisor* are not particularly relevant here.[69] The reason is that appellant argues that *Kisor* requires that we revisit *Pacheco* because that decision employed the *Auer* framework. If, as we hold is the case, *Kisor* does not require us to revisit *Pacheco*, we need not consider the details of so-called *Kisor* deference.

To be clear, the essential question before us is whether the Supreme Court meant for *Kisor* to be applied only to future situations in which Federal courts confront an ambiguous regulation and an agency advances an interpretation of that regulation. Or, in contrast, whether the Supreme Court meant that in addition to such future use of *Kisor* deference, Federal courts would have to reconsider earlier decisions in which they had deferred to an agency interpretation of an ambiguous regulation under *Auer,* at least to the extent of considering whether such earlier decisions comported with the spirit of the new *Kisor* deference. Appellant relies on this second possible interpretation to support his argument in this appeal. Unfortunately, the Supreme Court said nothing about this issue (i.e., future only vs. future and reconsideration) in *Kisor*.

The Supreme Court's silence in *Kisor* about how its decision would apply to cases decided under *Auer* was on display when our Court decided *LaBruzza*.[70] There, the Court considered the very question we return to today, namely whether *Kisor* requires us to revisit cases that were decided under the *Auer* framework. *LaBruzza* concerned whether the Court remained bound by our decision in *Cantrell v. McDonough*,[71] which used an *Auer* deference analysis to conclude that the phrase "employment in a protected environment" in 38 C.F.R. § 4.16 was ambiguous.[72] In *LaBruzza*, the Court stated that, given that *Kisor*, which clarified the framework for regulatory interpretation, was decided after *Cantrell*, "the Court concludes that to conform with controlling Supreme Court precedent we must revisit the ambiguity question."[73] And so it would seem that appellant is on solid footing that under *LaBruzza* we would be required to reconsider our decision in *Pacheco* interpreting § 3.157(b) because it was based on an *Auer* judicial deference analysis. After all, just as this panel is bound by *Pacheco* unless we are required to revisit the decision under

---

[69] The Court describes how the *Auer* framework should be applied under *Kisor*. *See LaBruzza*, 37 Vet.App. at 117.

[70] 37 Vet.App. 111.

[71] 28 Vet.App. 382 (2017).

[72] *LaBruzza*, 37 Vet.App. at 117; *Cantrell*, 37 Vet.App. at 116.

[73] *LaBruzza*, 37 Vet.App. at 119.

13

*Kisor,* we are equally bound by *Labruzza* unless that decision had been undercut in some way.[74] That is what horizontal stare decisis is all about. However, as we explain next, the world of administrative law changed dramatically since *LaBruzza* was decided. Indeed, it changed dramatically in the weeks after we heard oral argument in this appeal. And those changes suggest that *LaBruzza*'s approach to revisiting cases decided under the *Auer* framework is no longer controlling.

On June 28, 2024, the Supreme Court decided *Loper Bright*,[75] in which the Court overruled its landmark decision in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*[76] For 40 years, *Chevron* provided the framework explaining when Federal courts were to defer to an agency's permissible interpretation of an ambiguous statute that the agency was empowered to execute. This is not the case to explore how the post-*Chevron* legal landscape looks. No doubt, the Court will have ample opportunity to do so in the future. But the fact is, those details are not relevant to the case before us. However, *Loper Bright* provides important guidance for us because in it the Supreme Court specifically discussed how the change in administrative law that case creates should apply to *existing* decisions. Specifically, the Supreme Court held that in overruling *Chevron,*

> we do not call into question prior cases that relied on the *Chevron* framework. The holdings of those cases that specific agency actions are lawful—including the Clean Air Act holding of *Chevron* itself—are still subject to statutory *stare decisis* despite our change in interpretive methodology. *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 457 (2008). Mere reliance on *Chevron* cannot constitute a "'special justification'" for overruling such a holding, because to say a precedent relied on *Chevron* is, at best, "just an argument that the precedent was wrongly decided." *Haliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 266 (2014) (quoting *Dickerson v. United States*, 530 U.S. 428, 443 (2000)). That is not enough to justify overruling a statutory precedent. [77]

So, what do we do given that *Loper Bright* answered the same generic question of administrative law and statutory stare decisis in a way that is at odds with how our Court approached the question in *Labruzza*? As we will explain, we conclude that *Loper Bright*

---

[74] *See Bethea v. Derwinski*, 2 Vet.App. 252, 254 (1992) (Court is bound by prior panel and en banc opinions, and "a panel or single judge may not render a decision which conflicts materially with such earlier panel or en banc opinion").

[75] 144 S. Ct. 2244, 603 U.S. __ (2024).

[76] 467 U.S. 837 (1984). *See Loper Bright*, 144 S. Ct. at 2273, 603 U.S. __,__.

[77] *Loper Bright*, 144 S. Ct. at 2273, 603 U.S. at __,__. Note that we have elected to include in our quotation the cases on which the Supreme Court relied to reach its conclusion.

14

sufficiently undercuts *LaBruzza*'s approach to revisiting existing decisions based on *Auer*. But before we explain why we reach that conclusion, we pause to note two things about *LaBruzza*. First, we do *not* hold that the *LaBruzza* Court was wrong at the time it decided to revisit a case decided under the *Auer* framework. As we stated, *Kisor* was silent on that issue and the Court did not have the benefit of the Supreme Court's guidance in *Loper Bright*. Second, nothing in our decision today calls into question the substantive holding in *LaBruzza* regarding the meaning of the phrase "employment in a protected environment."[78] *LaBruzza*'s rule on that question remains the law. Again, that is what horizontal stare decisis is all about.

Let's return to why we conclude that *Loper Bright* informs us that we should not follow *LaBruzza* with respect to whether to revisit cases decided under the now-altered *Auer* framework. We have little guidance in our Court's caselaw about what authority a panel of this Court has to follow existing caselaw when it comes to precedent that has been undermined by a later decision from a superior court such as the Supreme Court or the Federal Circuit.[79] But we are not writing on a blank slate because other Federal appellate courts have addressed this question through rules often described under the rubric of a "prior precedent rule." For example, in *Troy v. Samson Manufacturing Corp.*,[80] the Federal Circuit adopted the Ninth Circuit's prior precedent rule from *Miller v. Gammie* to determine how the Federal Circuit would decide if a prior precedent had been undermined by later developments.[81] In *Miller*, the Ninth Circuit held that a three-judge panel cannot overrule a prior panel's decision in light of subsequent Supreme Court precedent unless that prior decision was irreconcilable with that Supreme Court precedent.[82] In articulating this "clearly irreconcilable" rule, *Miller* held that "the issues decided by the higher court need not be identical in order to be controlling. Rather, the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable."[83]

---

[78] *LaBruzza*, 37 Vet.App. at 123-24.

[79] *Id.* at 118-19.

[80] 758 F.3d 1322, 1326 (Fed. Cir. 2014).

[81] 335 F.3d 889, 893 (9th. Cir. 2003).

[82] *Id.* at 893-94.

[83] *Id.* at 900.

Just as the Federal Circuit did for assessing its caselaw under the prior precedent rule, we conclude that the Ninth Circuit's test in *Miller* strikes the right balance between the importance of stare decisis and adherence to now-existing law articulated by a relevant higher tribunal. The test is strict enough that the benefits of stare decisis, such as providing clear rules for litigants and judges to follow, will not be discarded lightly. [84] At the same time, the test allows a court to avoid rendering new decisions that no longer are supported by the then-extant legal landscape. So, we adopt *Miller* as the prior precedent rule for our Court.

Applying *Miller*, we conclude that, to the extent that *LaBruzza*'s approach to revisiting a case after the Supreme Court's *Kisor* decision requires us to revisit existing precedent based on *Auer*, *LaBruzza* is no longer controlling because the Supreme Court's *Loper Bright* decision is irreconcilable with that approach. We recognize that *Loper Bright* concerned the *Chevron* doctrine and *LaBruzza* addressed *Kisor* and the *Auer* doctrine. But *Chevron* and *Auer* were closely aligned. Both cases dealt with when and how a Federal court should defer to an agency's interpretation of an ambiguous controlling legal authority, a statute on the one hand, and a regulation on the other. Moreover, in both *Loper Bright* and *Kisor*, the Supreme Court significantly altered the preexisting legal framework governing the deference question. And finally, the changes the Supreme Court wrought by overruling *Chevron* and significantly altering *Auer* present the same central challenge about whether the alteration should be forward looking only or be applied to upset existing precedent. The Supreme Court's reasoning for why its change to *Chevron* in *Loper Bright* should be applied only to future decision applies with equal force to why its changes to *Auer* in *Kisor* should be applied in the same way. Indeed, we are hard pressed to find a principled reason to apply a different rule for *Kisor* than what we are told to apply in *Loper Bright*.

We recognize that the "clearly irreconcilable" standard in *Miller* is a high one, but it is met here. There is simply no way in which we can apply that portion of *LaBruzza* concerning the treatment of existing precedent, in light of *Kisor,* in a manner that is consistent with the Supreme Court's recent decision in *Loper Bright*. We reiterate that *LaBruzza*'s holding concerning the meaning of the phrase "employment in a protected environment" remains sound, and that the

---

[84] In *Payne v. Tennessee*, the U.S. Supreme Court recognized the importance of stare decisis, specifically holding that "[s]*tare decisis* is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." 501 U.S. 808, 827 (1991). However, the Supreme Court also recognized that there are circumstances in which following governing decisions is "unworkable" or "practically impossible." *Id.* at 827-28. (internal citation omitted).

16

Court's approach to revisiting prior precedent in that case was an adept effort to conform to the Supreme Court's decision in *Kisor*, which was silent as to whether its framework was to only apply to future situations, without the benefit of the Supreme Court's recent guidance in *Loper Bright*.

Considering the foregoing, we reject appellant's argument that we are not bound by *Pacheco* and conclude that he has failed to demonstrate that § 3.157(b) as interpreted in *Pacheco* entitled him to an August 1985 effective date.[85] Because *Pacheco* remains binding law—negating the threshold step in appellant's argument—we need not consider the remainder of appellant's assertions concerning the merits.[86] Indeed, we are not allowed to do so because, to repeat, we are bound by *Pacheco*.[87] Therefore, we will affirm the Board's denial of an August 1985 effective date for appellant's entitlement to service connection for tinea pedis.

### B. Earlier Effective Date–November 1987

Having rejected appellant's argument for a 1985 effective date, we now consider his alternative argument that the Board clearly erred when it determined that his November 6, 1987, submission to VA was not an informal claim for service connection for tinea pedis. Specifically, appellant maintains that the Board did not comply with the Federal Circuit's decision in *Shea v. Wilkie*.[88] Appellant asserts that in his November 6, 1987, letter he "attempted to re-raise the claims denied by the March 1984 [B]oard decision" and his intent was "clearly identified in the documents surrounding" that letter.[89] Appellant also contends that he was referring to his previously denied tinea pedis claim when he used the phrase "compensable related conditions previously identified," because he has always treated his pes planus and tinea pedis claims as one claim. Our review of the Board's decision belies appellant's assertions.

---

[85] *See Hilkert v. West*, 12 Vet.App. 145, 151 (2004) (en banc), *aff'd per curiam*, 232 F.3d 908 (Fed. Cir. 2000) (table).

[86] *See Quirin v. Shinseki*, 22 Vet.App. 390, 395 (2009) ("[T]he Court will not ordinarily consider additional allegations of error that have been rendered moot by the Court's opinion or that would require the Court to issue an advisory opinion.").

[87] Although the Court will not consider the merits of Mr. Rorie's arguments concerning his "disallowed or denied" theory, we note that in his briefs Mr. Rorie appeared to conflate VA's denial of service connection for tinea pedis with a claim that had been "disallowed for the reason that the disability was not compensable in degree," which is required under 38 C.F.R. § 3.157(b). However, during oral argument Mr. Rorie's counsel confirmed the understanding that appellant's tinea pedis claim had not been "disallowed for the reason that the disability was not compensable in degree." OA at 22:01-:26.

[88] 926 F.3d at 1368-69.

[89] Appellant's Br. at 13-14.

17

"[T]he essential requirements of any claim" include "(1) an intent to apply for benefits [and] (2) an identification of the benefits sought."[90] In *Shea*, the Federal Circuit held that "while a pro se claimant's 'claim must identify the benefit sought,' the identification need not be explicit in the claim-stating documents, but can also be found indirectly through examination of evidence to which those documents themselves point when sympathetically read."[91] Further, "in deciding what disabilities, conditions, symptoms, or the like the claim-stating documents are sympathetically understood to be identifying, VA must look beyond the four corners of those documents when the documents themselves point elsewhere—here, to medical records."[92]

The Board's determination about whether a claimant filed an informal claim is a finding of fact that the Court reviews for clear error.[93] As factfinder, the Board has the responsibility to assess and weigh the evidence.[94] We will reverse a factual finding of the Board only when, after reviewing the evidence of record, we are left with "'a definite and firm conviction that a mistake has been committed.'"[95] For all its findings on a material issue of fact and law, the Board must support its factual determinations and legal conclusions with a written statement of reasons or bases that is "adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court."[96] If the Board fails to do so, remand is appropriate.[97]

In November 1987, appellant submitted a statement in support of his claim that stated:

> I am requesting a re-examination of my service-connected disabilities for the purpose of obtaining an increased disability rating. The basis of this request for a higher . . . service-connected disability rating is due to a continual worsening of compensable related conditions previously identified. Past visits and treatments at VA medical facilities have been largely unsuccessful in curbing the pain and increased debilitativeness of my service-connected disabilities which have been further exacerbated by growing older."[98]

---

[90] *Brokowski v. Shinseki*, 23 Vet.App. 79, 84 (2009).

[91] 926 F.3d at 1368 (quoting 38 C.F.R. § 3.155(a) (2007)).

[92] *Shea*, 926 F.3d at 1369.

[93] *Sellers v. Wilkie*, 30 Vet.App. 157, 163 (2018), *rev'd on other grounds*, 965 F.3d 1328 (Fed. Cir. 2020).

[94] *See D'Aries v. Peake*, 22 Vet.App. 97, 107 (2008).

[95] *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

[96] *Allday v. Brown*, 7 Vet.App. 517, 527 (1995).

[97] *Tucker v. West*, 11 Vet.App. 369, 374 (1998).

[98] R. at 20,075.

The Board considered whether the November 1987 statement was an informal claim for service connection for tinea pedis. The Board explained that

> even reviewing [appellant's] November 1987 statements as liberally and sympathetically as possible, the Board is unable to conclude that [appellant] submitted an informal claim seeking service connection for tinea pedis, and intent to apply for service connection for tinea pedis, a request to reopen a previously denied claim, or point to other evidence which could show intent."[99]

The Board further explained that appellant specifically stated that he was requesting reexamination of his *service-connected disabilities* and made no mention of his tinea pedis or skin condition. Critically, the Board observed that appellant was not service connected for tinea pedis at the time he made the November 1987 statement.[100] Additionally, the Board specifically considered *Shea*, concluding that "[u]nlike the facts in *Shea*, [appellant's] statement did not point to any specific evidence to suggest service connection was warranted."[101] Finally, the Board explained that the "most reasonable interpretation" of the November 1987 letter is that it expresses an intent to seek an increased disability rating for his service-connected pes planus disability.[102] The Board also considered evidence surrounding the November 1987 statement and concluded that it only reaffirmed its conclusion that the November 1987 letter was most reasonably read as a claim for increase for his service-connected pes planus. And there is a plausible basis in the record for the Board's determination; specifically, the veteran himself in the November 1987 letter asked VA for an "increased disability rating" for his "service-connected" disability.[103]

Further, contrary to appellant's assertions, the Board's decision complied with *Shea*. The Board assessed appellant's intent and provided adequate reasons or bases for its conclusion that appellant's November 1987 was not an informal tinea pedis claim. Appellant cites evidence that he purports are surrounding documents that should have informed his intent in 1987.[104] However, the documents to which he points pre-date the March 1984 denial of his claim for service

---

[99] R. at 10.

[100] *Id.*

[101] *Id.*

[102] *Id.*

[103] R. at 20,075; *see Gilbert*, 1 Vet.App. at 53.

[104] *See* Appellant's Br. at 14 (citing R. at 20,148-52 (Aug. 1983 SOC), 20,162 (Apr. 1983 rating decision).

connection for tinea pedis.[105] Appellant never explains how statements in 1983 could possibly inform his intent in November 1987. We won't attempt to fill in the blanks.[106]

The bottom line is that the Board's finding that the November 1987 statement was not an informal claim is not clearly wrong. So, we will affirm the Board's denial of a November 1987 effective date for appellant's entitlement to service connection for tinea pedis.

### III. CONCLUSION

After consideration of the parties' briefs, oral argument, the governing law, and the record, the Court AFFIRMS the August 19, 2022, Board decision.

TOTH, *Judge*, concurring: A concurrence, it can be said, is where a judge agrees with ninety-eight percent of a decision but writes only about the two percent he disagrees with. That's certainly the case here, as I join Judge Allen's fine opinion in all but one respect. The two percent here, as it were, is the premise that our decision in *LaBruzza v. McDonough*, 37 Vet. App. 111 (2024) can be read as broadly supporting the relitigation of countless decisions from this Court that relied on *Auer* deference.

I read *LaBruzza* as more modest in scope and ambition. Tasked with interpreting the previously undefined regulatory phrase "in a protected environment," the Court in *LaBruzza* declined to heed analysis from *Cantrell v. Shulkin*, 28 Vet. App. 392 (2017) that regarded the phrase as ambiguous, on grounds that the methodology and rationale undergirding *Cantrell* had been disavowed by intervening Supreme Court precedent. This is perfectly sensible: it's hard to view *Cantrell*'s ambiguity ruling as binding on all future panels when such determinations are normally inchoate predicates of ultimate rulings recognizing an official interpretation. Faced with a still-undefined regulatory phrase, *LaBruzza* recognized that the methodology of the inquiry it was tasked to perform had been recast in fundamental ways by the Supreme Court's decision in *Kisor v. Wilkie*, 588 U.S. 558 (2019). In resuming the unfinished task of assigning an official interpretation to the phrase, the Court merely revisited predicate findings that were no longer

---

[105] *See* R. at 20,148-152 (Aug. 1983 SOC), 20,162 (Apr. 1983 rating decision).

[106] *See Coker v. Nicholson*, 19 Vet.App. 439, 442 (2006) (per curiam) ("The Court requires that an appellant plead with some particularity the allegation of error so that the Court is able to review and assess the validity of the appellant's arguments."), *vacated on other grounds sub nom. Coker v. Peake*, 310 F. App'x 371 (Fed. Cir. 2008) (per curiam order); *see also Locklear*, 20 Vet.App. at 416.

tenable in light of intervening precedent from the Supreme Court about how deference functions. Nothing in *LaBruzza*, however, proposes that longstanding regulatory definitions set out in decisions such as *Pacheco v. Gibson*, 27 Vet. App.21 (2014) are up for grabs.

21